UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
United States,

                              Plaintiff,      CV-04-5541  (CPS)

     - against -

Immacula Donchance Vilus,

                              Defendant.
----------------------------------------X
United States,

                              Plaintiff,      CV-04-5547 (CPS)

     - against -

Frank Walker,

                              Defendant.
----------------------------------------X
United States,

                              Plaintiff,      CV-05-0094 (CPS)

     - against -

Eliezer E. Torroella

                              Defendant.
----------------------------------------X
United States,

                              Plaintiff,      CV-05-0099 (CPS)

     - against -

Sharemah Sanders,

                              Defendant.
----------------------------------------X
United States,

                              Plaintiff,      CV-05-0741 (CPS)

     - against -

Marie Francois,                               MEMORANDUM OPINION
aka Marie Lapomardede,                        AND ORDER

                              Defendant.
----------------------------------------X

SIFTON, Senior Judge.

     These five cases were commenced by the United States to

recover on defaulted student loans.  Default judgments have been

entered against Vilus, Walker, Torroella, and Sanders, but the

1

court reserved decision on the plaintiff's motions for attorneys' fees. In *United States v. Torroella*, the court issued an order to show cause as to whether the default judgment should be vacated in light of a letter by the Court from a relative of the defendant. In *United States v. Francois*, plaintiff also moves for a default judgment.

For the reasons set forth below, plaintiff's motion for default judgment against Marie Francois is granted, attorneys' fees in the amount of 20% of the defendants' debts are granted as to all of the defendants, except Torroella. The court declines to vacate the default judgment against Torroella, but the motion for attorneys' fees in this case is stayed pursuant to 11 U.S.C. § 362(a), as a result of defendant's filing under Chapter 7 of the Bankruptcy Code.

### **Background**

The following facts are drawn from the complaints and the submissions of the plaintiff. Although a default judgment is deemed an admission of all well-pleaded facts, it is not an admission of the damages claimed, so the Court considers plaintiff's motion for attorneys' fees separately. *See American Diamond Tool & Gauge, Inc. v. De Beers Consol. Mines, Ltd.*, 119 F.Supp. 2d 418, 420 (S.D.N.Y. 2000).

### *Immacula Donchance Vilus*

Defendant failed to repay her student loans, and on July 19,

2005, a default judgment was entered against her in the amount of $5,515.51 based on her failure to answer the complaint. The promissory note of the New York State Higher Education Services Corporation signed by defendant provides that

> If I fail to pay any of those amounts when they are due, I will pay all charges and other costs, including the fees of an outside attorney and court costs that are permitted by Federal law and regulations for the collection of this loan which you incur in collecting this loan.

After defendant defaulted on the loan, the loan was assigned to the Department of Education under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1071 et seq. (34 C.F.R. § 682). Plaintiff moves in the alternative for attorneys' fees in the amount of 20% of the total judgment ($1,103.10), or for a lodestar figure based on 4.5 hours of lawyer's time multiplied by counsel's usual hourly rate of $350 per hour ($1,575).

### *Frank Walker*

Defendant failed to repay his student loans, and on July 19, 2005, a default judgment was entered against him in the amount of $6,470.81 based on his failure to answer the complaint. The promissory note by the First America Savings Bank signed by the defendant provides that

> If I default, I will also pay all charges and other costs – including attorney's fees – that are permitted by federal law and regulations for the collection of these amounts.

After defendant defaulted on the loan, the loan was assigned to

the Department of Education under loan guaranty programs

authorized under Title IV-B of the Higher Education Act of 1965,

as amended, 20 U.S.C. § 1071 et seq. (34 C.F.R. § 682). Plaintiff

moves in the alternative for attorneys' fees in the amount of 20%

of the total judgment ($1,294.16), or for a lodestar figure based

on 4.5 hours of lawyer's time multiplied by counsel's usual

hourly rate of $350 per hour ($1,575).

### *Eliezer E. Torroella*

Torroella failed to repay his student loan, and on July 19,

2005, a default judgment was entered against him in the amount of

$6,398.69 based on his failure to answer the complaint.  The

promissory note of the New York State Higher Education Services

Corporation signed by defendant provides that

> I agree to pay, in the event of default, reasonable
> attorney's fees of up to 20% of the amount due.

After defendant defaulted on the loan, the loan was assigned to

the Department of Education under loan guaranty programs

authorized under Title IV-B of the Higher Education Act of 1965,

as amended, 20 U.S.C. § 1071 et seq. (34 C.F.R. § 682). Plaintiff

moves in the alternative for attorney fees in the amount of 20%

of the total judgment ($1,279.74), or for a lodestar figure based

on 4.5 hours of lawyer's time multiplied by counsel's usual

hourly rate of $350 per hour ($1,575).

After default judgment was entered by the Clerk of the Court

on June 13, 2005, the Court received a letter dated June 20,

2005, from a relative of the defendant, claiming that (1) the defendant did not receive notice of the government's motion that indicated the exact date and time of the hearing; (2) the defendant does not speak English and therefore had difficulty understanding the complaint; (3) the summons and complaint was not mailed in an official government envelope; and (4) defendant's name was spelled incorrectly. The Court thereafter directed the plaintiff to show cause why the default judgment should not be vacated for the reasons set forth in the letter from defendant's relative.

On August 12, 2005, a bankruptcy case concerning Torroella was filed under Chapter 7 of the Bankruptcy Code.

*Sharemah Sanders*

Defendant failed to repay his student loan, and on July 19, 2005, a default judgment was entered against him in the amount of $6,057.05, later reduced by amendment to $5,607.61, based on his failure to answer the complaint. The promissory note of the William D. Ford Federal Direct Loan Program signed by defendant provides that

> If I fail to make payments on this Promissory Note
> when due, I will also pay collection costs including
> attorney's fees and court costs.

Unlike the other defendants, Sanders secured a direct loan with the Department of Education, under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1087a et seq. (34

C.F.R. § 685). Plaintiff moves in the alternative for attorney
fees in the amount of 20% of $5,607.61 ($1,121.52), or for a
lodestar figure based on 4.5 hours of lawyer's time multiplied by
counsel's usual hourly rate of $350 hour ($1,575).

*Marie Francois*

Defendant failed to repay her student loan, and on September
8, 2005, a default judgment was entered against her in the amount
of $4,111.22 based on her failure to answer the complaint, and an
additional amount of $822.24 for attorney's fees.

The promissory note of the New York State Higher Education
Services Corporation signed by defendant provides that

> If I fail to pay any of these amounts when they are
> due, I will pay all charges and other costs, including
> the fees of an outside attorney and court costs.

After defendant defaulted on the loan, the loan was assigned to
the Department of Education under loan guaranty programs
authorized under Title IV-B of the Higher Education Act of 1965,
as amended, 20 U.S.C. § 1071 et seq. (34 C.F.R. § 682). Plaintiff
moved in the alternative for attorney fees in the amount of 20%
of the total judgment ($822.24), or a lodestar figure based on
4.5 hours of lawyer's time multiplied by counsel's usual hourly
rate of $350 hour ($1,575).

## **Discussion**

*Attorney Fees*

Plaintiff moves in each case for attorneys' fees in the
amount of 20% of each judgment, or a lodestar figure based on 4.5

hours of labor multiplied by counsel's usual hourly rate of $350 hour ($1,575).[1]  In addition to provisions in each of the promissory notes, the Higher Education Act of 1965 § 484(a), as amended, provides that "a borrower who has defaulted on a [student] loan shall be required to pay . . . reasonable collection costs."  20 U.S.C. § 1091a(b)(1).

Because the statute leaves the terms "reasonable collection costs" undefined, the Court must defer to the Department of Education's interpretation of the term, if reasonable.  *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984); *Educ. Credit Mgmt. Corp. ("ECMC") v. Barnes*, 318 B.R. 482, 486-487 (S.D. Ind. 2004) (applying *Chevron* to DOE's interpretation of "reasonable collection costs").  Under *Chevron*,

> If [a] court determines Congress has not directly
> addressed the precise question at issue, the court does
> not simply impose its own construction on the statute
> ... Rather, if the statute is silent or ambiguous with
> respect to the specific issue, the question for the
> court is whether the agency's answer is based on a
> permissible construction of the statute.

*Chevron*, 467 U.S. at 842-843.  In *ECMC*, the district court concluded that the federal regulation promulgated by the Department of Education to recover reasonable collection costs as

---

[1]    Plaintiff's counsel performed the following tasks associated with prosecuting student loan defaults in each case: reviewing student loan collection file; skip trace; sending correspondence to and attempting communicate with defendant; drafting, filing and serving summons, complaint, waiver of service, and notice of default with court and defendant; and researching military service history of defendant.  (Plaintiff's Aff. of Amount Due, ¶ 8.)

a flat rate percentage based on average collection costs on a student debtor who had filed for Chapter 13 relief in bankruptcy court was not unconstitutional. *ECMC*, 318 B.R. at 489-490. The court reasoned that where Congress was silent on the issue of what constitutes reasonable collection costs, "[c]onsiderable deference is to be given the regulation". *Id.* at 487(citing *Kikalos v. C.I.R.*, 190 F.3d 791, 798 (7th Cir. 1999)).

The Department of Education has interpreted "collection costs" to include the fees incurred by attorney's in bringing suit on the loans in question. Where the loan is collected by the guaranty agency, the regulations provide,

> Whether or not provided for in the borrower's promissory note . . . the guaranty agency shall charge a borrower an amount equal to reasonable collection costs incurred by the agency . . . These costs may include, but are not limited to, all attorney's fees, collection agency charges, and court costs.

34 C.F.R. § 682.410(b)(2). Insofar as federal student borrowers are responsible for reasonable collection costs pursuant to 20 U.S.C. § 1091a and the federal regulations promulgated in its support, attorneys' fees are a component of those costs.

*What Constitutes Reasonable Collection Costs?*

Plaintiff contends that the 20% fee attached to the debt, or in the alternative, a lodestar figure based on 4.5 hours of lawyer's time multiplied by counsel's usual hourly rate of $350 hour ($1,575) is the "reasonable fees and expenses of attorneys"

to which he is entitled pursuant to 34 C.F.R. § 682.410(b)(2).
State and federal courts have imposed attorneys' fees in student
loan cases, pursuant to federal regulations pertaining to
collection of federal student loans, but there is no consensus as
to what constitutes reasonable collection costs under the
regulation.  *See George W. v. U.S. Dept. Of Educ.*, 149 F.Supp. 2d
1195, 1207 n.6 (E.D. Cal. 2000) ("What constitutes 'reasonable
costs is not clear. . . 34 C.F.R. § 682.410(b)(2) imposes no
limit on what costs may be included under reasonable costs".)
Both contingency fees and lodestars have been applied, often
without considering the alternative method.[2]

Again, where the statute is silent, a court looks to the
regulation to determine the meaning of reasonable costs.
*Chevron*, 467 U.S. at 842-843.  34 C.F.R. § 682.410(b)(2) limits
reasonable costs incurred in collecting a defaulted loan by a
guaranty agency to "equal the lesser of (I) [t]he amount the same

----

[2]     *United States v. Freeman*, 2002 WL 467688, *at 1, n.1 (N.D.
Cal. March 25, 2002) (the court found 9.25 hours at $175 per hour to
be reasonable);; *United States v. Clemens*, 1999 WL 615120, *at 1 (N.D.
Cal. August 9, 1999) (approving $155.83 in attorney's fees for a
default judgment of $1,605.22); *State of Oklahoma, ex rel Bd. of
Regents of the Univ. of Oklahoma v. Greer*, 204 F.Supp. 2d 1292, 1294
(W.D. Okla. 2002) (under the language of Perkins Loan promissory
notes, the court found that contingent fees ranging from one third to
forty percent were not unreasonable and covered principal plus accrued
interest); *see also N.J. Higher Educ. Assistance Auth. v. Martin*, 628
A.2d 365, 368 (N.J. Super Ct. App. Div. 1993) (authorizing 30%
attorney's fees, the Appellate Division reasoned that "it is thus
inappropriate to view the reasonableness of the fee only up until the
date of the judgment without any consideration of future collection
problems".).

borrower would be charged for the cost of collection under the
formula in 34 C.F.R. § 30.60; or (ii) [t]he amount the same
borrower would be charged for the cost of collection if the loan
was held by the U.S. Department of Education."  34 CFR §
682.410(b)(2).[3]  The regulations therefore interpret "reasonable
collection costs" to permit an assessment based on a contingency
contract, in this case up to 25% of the borrower's debt.  The
Secretary of Education explains that

> [The] authority to recover contingent fee charges from
> defaulters whose loans are held by the Department clearly
> establishes that under Federal law and policy, 'collection
> costs' include contingent fees charged to collect any
> defaulted Title IV student loan, whether held by the
> Department or an institution.
>     The determination of what constitutes a "reasonable"
> collection cost . . . must be made on the basis of what is
> reasonable from the perspective of the holder of the
> federally financed student loan obligation . . .

---

[3]     The amount recovered pursuant to 34 C.F.R. § 30.60 is the
total debt multiplied by 1/1-cr, where cr equals the commission rate
the Department pays to the collection agency.  "The formula was
adopted by the Department as a 'make whole' approach applied to
collect the costs incurred by guarantors across the entire portfolio
of defaulted loans, as opposed to attempting to calculate the actual
collection costs incurred with respect to each loan." *ECMC,* 318 B.R.
at 486, n.3. According to the testimony of a collection agency
attorney in a Montana bankruptcy case, the Department pays a
commission rate based on a yearly audit of the collection agency,
whereby total collection costs are divided by the total debts. *In re
Schler*, 290 B.R. 387, 392 (Bankr. D. Mont. 2003).  The percentage is
then input into the formula in 34 C.F.R. § 30.60 to determine the
amount assessed to each individual debt, which is applied at the
beginning of each calendar year. *Id.*  "The collection rate currently
assessed by the Department is 25 percent",  61 Fed. Reg. 47398
(September 6, 1996), and serves as a "ceiling" for collection costs.
*In re Schler*, 290 B.R. at 398.  This is "the market rate established
by collection agencies who do actually submit competitive bids to
provide a collection servicer to the Department." *ECMC*, 318 B.R. at
492.  Therefore, pursuant to 34 C.F.R. § 30.60, collection agencies
may assess collection costs at the rate determined by the lesser of
the amount determined by reference to the formula set forth in § 30.60
or 25%, and "subject to any limitation on the amount of those costs in
the note." 34 C.F.R. § 682.410(b)(2).

Department of Education Collection Procedures, 52 Fed. Reg. 45552, 45553 (November 30, 1987).

According to the Secretary, "Federal law authorizes institutions and their agents, to charge debtors the full amount of reasonably-negotiated contingent fees charged to collect loans, for three reasons." 52 Fed. Reg. at 45553. First, contingent fees are necessary to secure the services of collection firms, which are able to provide "added staff and expertise" required to protect the revolving student loan fund. Second, contingent fee agreements are the result of a competitive selection process, as Congress directed. Third, contingent fees are reasonable considering the stage of delinquency, given that the debtor has had reasonable opportunity to resolve the debt. *Id.*

Where, as here, the agency's interpretations are found in "formal adjudications and interpretations promulgated by an agency pursuant to notice-and-comment rulemaking", they are generally accorded *Chevron* deference. *Kruse v. Wells Fargo Home Mortg., Inc.,* 383 F.3d 49, 59 (2d Cir. 2004) (citing *United States v. Mead Corp.,* 533 U.S. 218, 226-27 (2001)); *See also ECMC*, 318 B.R. at 488, n.8 (finding no procedural flaws in the promulgation of this regulation where the regulation was appropriately published and comments properly taken into account before it was adopted).

One might argue that the Department's method of calculating fees is unreasonable because it is not tied to the actual effort expended on collecting a particular debt, and that by tying the fees to a contingency fee contract, the Department imposes the costs of unsuccessfully attempting to collect some student loans of debtors who eventually pay.  Indeed, the *ECMC* court recognized:

> Cost averaging as a means of allocating and recouping the collection costs incurred by the agency inevitably creates individual 'winners and losers'. . . [S]ome borrowers will be assessed amounts that are higher than the actual amounts of their individual costs, and some, lower amounts. . . [C]are obviously must be given to assure that any disparity between the actual costs of collection and the imposed costs is kept to a minimum so that the benefits of efficiency are not trumped by unfair hardship to some borrowers.

*ECMC,* 318 B.R. at 488.  The court concluded that in the absence of evidence that such disparity existed, deference to the agency regulation under *Chevron* was required.  *Id*. at 489.

By entering into a contingency-fee agreement to collect upon the numerous student loans it issues each year, the Government necessarily passes on more than the actual costs of litigating each individual debtor's case to the debtor.  This is so because any private attorney entering into a contingency contract with the Government to collect these notes knows that a substantial portion of them will go uncollected.  Not all debtors will pay. In negotiating his contract, an attorney will therefore require a higher contingency rate to compensate for the fact that not all of the cases he works on will result in remuneration.  A debtor

who does pay therefore pays attorneys fees at a higher rate than he would if all debtors paid their judgments, and higher than the amount he would pay if the Government hired attorneys at an hourly rate. *See Leasing Serv. Corp. v. Dickens*, 1988 U.S. Dist. LEXIS 15767, at *23 (S.D.N.Y., August 26, 1988) ("When the fee is to be reimbursed by the debtor, however, there is no rational basis for requiring the defendant against whom recovery is had in a particular case to compensate the attorney for his unsuccessful efforts in other cases.")

Such, however, is the case whenever a defendant is required to pay a plaintiff's attorney's fees when that attorney has been hired pursuant to a contingency fee agreement. Any plaintiff's attorney who enters into a contingency fee agreement on a case to enforce a contract or promissory note considers the possibility that no judgment will ever be collected. That risk is accounted for in the size of the negotiated contingency rate. Yet courts commonly permit a plaintiff suing to enforce a contract or promissory note to recover, in addition to the debt, the fee paid to the attorney pursuant to the contingency agreement. *See, e.g., 3H Enter., Inc. v. Murray*, 994 F.Supp. 403 (N.D.N.Y. 1998). The defendant in those cases, like the defendant in the cases at bar, pays a higher attorney's fee award to account for that risk and effectively pays for the attorney's unsuccessful litigation against debtors who do not satisfy the judgments against them.

The only limit to this practice appears to be that the contingency fee agreement may not be "exorbitant" or "unreasonable." *See In Time Prod., Ltd. v. Toy Biz, Inc.,* 38 F.3d 660, 667 (2d Cir. 1994); *3H Enter.*, 994 F.Supp. at 404-405; *Leasing Service*, 1988 U.S. Dist. LEXIS 15767, at *24 (citing *Equitable Lumber Corp. V. IPA Land Development Corp.*, 38 N.Y.2d 516, 524 (1976) ("While plaintiff may enter into any fee arrangement it wishes with counsel, it should not be permitted to manipulate the actual damage incurred by burdening the defendant with an exorbitant fee arrangement . . . If the amount is found to be unreasonably large, then the provision is void as a penalty."). A plaintiff may not burden a defendant with a contingency agreement that it would not have entered into absent the fee-shifting arrangement. *In Time Prod.,* 38 F.3d at 668. Because there is no economic distinction between the Government entering into a contingency-fee agreement in these cases and a private party suing to enforce a promissory note entering into a similar contingency agreement, the same analysis should apply. The Government in this case is actually seeking an award of 20% of the total debt, less than the 25% that the Department of Education typically charges or could charge pursuant to 34 C.F.R. § 30.60(b). Accordingly, I conclude that such an arrangement is

neither unreasonable nor exorbitant.[4]

As an alternative to a fee based on a percentage of the debt, plaintiff's counsel proposes a lodestar calculation based on an estimated expenditure of 4.5 hours on a typical loan collection case at $350 per hour.[5]  In the Second Circuit, courts generally calculate attorney's fees using the lodestar method. *Wells et al. v. Bowen,* 855 F.2d 37, 43 (2d Cir. 1988) (citations omitted); *McIntyre v. Manhattan Ford*, 672 N.Y.S.2d 230, 232 (N.Y. Sup. Ct. 1997).  The lodestar is determined by the number of hours reasonably worked multiplied by the reasonable hourly rate. *Wells*, 855 F.2d at 43 (citing *Pennsylvania v. Delaware Valley*

---

[4]    Responding to criticism that the formula provided for in 34 C.F.R. § 30.60 yielded unreasonable collection costs, and that actual costs, provided they were reasonable, should be assessed, the Secretary of Education explained that

> This regulation, which uses a formula to determine average collection costs, is consistent with the Federal Claims Collection Standards, 4 C.F.R. Part 101, et seq.  Those standards require the Secretary to recover his costs in collecting a delinquent debt. The Department does not charge a borrower the actual costs incurred in collecting his or her loan. These costs may not only exceed the thresholds prescribed in 34 CFR 30.60, but in the case of certain low balance loans, may be greater than the outstanding balance of the loan. The Secretary believes that the formula provided by 34 CFR 30.60 provides a reasonable measure of collection costs that should be charged on a defaulted loan.

59 Fed. Reg. 5961664, 61669 (December 1, 1994).

[5]    Despite the Court's request for counsel to submit contemporaneous billing records, as is typically required by courts in this circuit, *see New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148(2d Cir. 1983), plaintiff has not submitted any, stating that "since contemporaneous time records are generally not kept in collection cases, due to the volume of material and fluidity of activity, contemporaneous time records could not be submitted in this case."  (Plaintiff's Aff. Supp., Vilus, ¶ 18.)

*Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986); *see also Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973). Courts may adjust this figure based on a case's complexity, any special skill required of the attorney, or "the contingent nature of the case, reflecting the likelihood that hours were invested and expenses incurred without assurance of compensation." *Delaware Valley*, 478 U.S. at 563 (citing *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir. 1975).[6]

Deciding between the amount based on a lodestar, and the 20% amount, I conclude that the imposition of attorneys' fees in the amount of 20% of each of the defendants' accumulated debt is not unreasonable. As the holder of the debt, the Department of Education is entitled to reasonable collection costs, including attorneys' fees, it has incurred as a result of the borrowers' defaults. In addition to the fact that no contemporaneous billing records have been submitted, applying a lodestar, as is customary in this circuit, based on Mr. Sucher's estimated hours at his standard hourly rate does not account for those other collection costs, including attorney's fees, that the Department

---

[6] In an application for attorney's fees by same counsel in a student loan case in the Eastern District last year, Magistrate Judge Boyle approved the estimate of 4.5 hours spent on student loan cases, but recommended that a lodestar of $250.00, rather than $350.00, be employed, "based on the relative simplicity of the issues involved in this case, the defendant's default, and the market rate." *United States v. Mueller*, 04-CV-3063, at 6 (E.D.N.Y. December 22, 2004).

has incurred since the borrowers defaulted on their loans, in these cases, many years prior to the instigation of these actions.[7]  Therefore, plaintiff's motion for attorneys' fees in the amount of 20% of each defendants' total debt is granted, except in the case of the bankrupt defendant Torroella, and plaintiff's motion for attorneys' fees based on a lodestar in the alternative is denied.

Torroella's bankruptcy filing on August 12, 2005, triggers an automatic stay of any judicial actions to recover a debt pursuant to 11 U.S.C. § 362(a).  Only bankruptcy courts have jurisdiction to terminate, annul or modify the automatic stay. 28 U.S.C. § 157(b)(2)(G); *In re Dominguez*, 312 B.R. 499, 505 (Bankr. S.D.N.Y. 2004)(citations omitted).[8]  Therefore, any

---

[7]     I also note the Department of Education's policy of administering collection costs on a contingency basis, as described by an attorney for the guaranty agency who testified in *In re Schler*: "[T]he Secretary of Education has determined that tracking costs of collection of each defaulted loan would create too onerous of a system, that such a level of specificity would be untenable, inefficient, and that such detailed record keeping would result in far higher collection costs for debtors than percentage-based collection costs."  *In re Schler*, 290 B.R. 387, 392 (Bankr. D. Mont. 2003).

[8]     A decision vacating a judgment or awarding attorneys' fees is not a mere ministerial act, which may under some circumstances proceed post-petition, despite the automatic stay.  *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994)(entry of judgment by clerk is mere ministerial act); *In re Pettit,* 217 F.3d 1072, 1080 (9th Cir. 2000) ("Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a proceeding."); *In re Best Payphones, Inc.*, 279 B.R. 92, 97-98 (Bankr. S.D.N.Y. 2002)(citing *Soares v. Brockton Credit Union*, 107 F.3d 969, 975 (1st Cir. 1997)("A ministerial act is one that is essentially clerical in nature . . . [whereas] the issuance of a decision by a judge or similar officer is clearly prohibited, and therefore, void.")

motion to vacate the judgment and plaintiff's motion to recover
attorney's fees regarding defendant Torroella's debt are stayed
until the earliest of "(a) the time the bankruptcy case is
closed; (b) the time the bankruptcy case is dismissed; or (c) the
time a discharge is granted or denied, *see* 11 U.S.C. § 362(c)(2),
or until the bankruptcy court "'grants some relief from the
stay.'" *Eskenazi v. Klein*, 1995 WL 362460, *2 (E.D.N.Y. June 6,
1995) (citing *Pope v. Manville Forest Products Corp.*, 778 F.2d
238, 239 (5th Cir. 1985)).

## Conclusion

For the foregoing reasons, the plaintiff's application for
attorneys' fees of 20% of the debt is granted with regard to
defendants Vilus, Walker, Sanders and Francois, and plaintiff's
application for attorneys' fees based on a lodestar figure is
denied.  Plaintiff's motion for attorney's fees with regard to
defendant Torroella and his application to vacate the judgment
are both stayed pursuant to 11 U.S.C. § 362(a).

The Clerk is directed to furnish a filed copy of the within
to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          September 8,2005


          By: /s/ Charles P. Sifton (electronically signed)
              United States District Judge